IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **VOXER, INC. AND VOXER IP LLC,** § | |
| *Plaintiffs,* § | |
| § | |
| v. § | CIVIL ACTION 6:20-cv-00011-ADA |
| § | |
| **FACEBOOK, INC AND** § | |
| **INSTAGRAM LLC,** § | |
| *Defendants.* § | |

**ORDER GRANTING IN PART DEFENDANT FACEBOOK'S
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

Came on for consideration this date the Motion of Defendants Facebook, Inc. and Instagram LLC, (collectively, "Facebook"[1]) to transfer under 28 U.S.C. § 1404(a), filed on February 28, 2020. ECF No. 29. Plaintiffs Voxer Inc. and Voxer IP LLC, (collectively, "Voxer"[2]) filed its response on March 16, 2020 (ECF No. 36). Facebook submitted its reply on March 19, 2020 (ECF No. 41). After careful consideration of the above briefing the Court **DENIES** Facebook's motion to transfer the case to the Northern District of California ("NDCA"), but **GRANTS** Facebook's alternative motion to transfer the case to the Austin Division of the Western District of Texas ("WDTX"), for the reasons described below.

---

[1] Defendant Instagram is a Delaware limited liability company and a wholly-owned subsidiary of Facebook. ECF No. 1 at ¶10–11 Facebook is a Delaware corporation with a principal place of business in NDCA. *Id.*

[2] Plaintiff Voxer, Inc. is a Delaware corporation with its principal place of business in NDCA, Voxer IP, LLC., is Delaware limited liability company and the legal owner of the Asserted Patents. *Id.* at ¶9 Voxer IP, LLC, is a wholly-owned subsidiary of Voxer Inc. *Id.*

1

### I.     Factual Background and Procedural History

Voxer filed this lawsuit on January 7, 2020, alleging infringement of the five patents-in-suit.[3] ECF No. 1 at 2. According to the Complaint, these highly technical patents enable the reliable transmission of voice and video communications with the immediacy of live communication. *Id.* at 1. Further, these technologies work together to enable streaming media, as it is created to be instantly transmitted, under poor and varying network conditions, to other viewers to watch in real time or the media can be stored on networks for later views. *Id*. at 15–40. Voxer alleges that both Defendants' have multiple products[4] that directly and continuously infringed on the asserted patents. *Id.* at 3–4.

Facebook filed a motion to transfer venue under 28 U.S.C. § 1404(a) requesting that the case be transferred to the Northern District of California ("NDCA") or, in the alternative, to the Austin Division of the Western District of Texas ("WDTX").  ECF No. 29 at 1.

### II.    Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *In re Volkswagen of Am.,*

---

[3] U.S. Patent Nos. 8,180,030 (the " '030 Patent"); 9,634,969 (the "'969 Patent"); 10,109,028 (the " '028 Patent"); 10,142,270 (the " '270 Patent"); and 10,511,557 (the " '557 Patent"), (collectively, the "Asserted Patents").
[4] The four products include: (1) facebook.com and instagram.com websites; (2) Facebook Live and Instagram Live services; (3) the Facebook and Instagram applications for mobile and other devices; and (4) devices running the Facebook or Instagram applications. *See,* ECF No. 1 at 3–4.

*Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when the suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). "The court cannot transfer a case where the result is merely to

shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10, 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy").

### III. Discussion regarding transfer to the Northern District of California

As a preliminary matter, neither party contests that venue could be proper in NDCA and could have been filed there. Facebook argues that transfer from WDTX is appropriate because it has determined that the Voxer's Complaint concerns only Facebook Live and Instagram Live (collectively, "Live Products"), which are primarily created and maintained in three other locations and specifically not in WDTX. ECF No. 29 at 2. In its response, Voxer illustrates how each of the accused products is intertwined with each of the others, and to focus on only two of them would ignore the majority of highly relevant information within WDTX. ECF No. 38 at 1–3. The Court resolves factual conflicts, of this nature, in favor of the non-movant. *See Weatherford Tech*, 2018 WL 4620636, at *2. Thus, the Court concludes that the other accused products may be equally as relevant to the case and should be decided by the Jury.

### a. Relative ease of access to sources of proof

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. Facebook argues that this factor weighs in favor of transfer to NDCA because the majority of the "relevant proof" is not in WDTX. ECF No. 29 at 6. Although Facebook admits it has an office and employees in WDTX, it claims "only one employee works part-time on the Live products." *Id*. at 2. Additionally, Facebook asserts that "the relevant documentation regarding the design, development, operations, marketing, and financing of both Live products is created and maintained primarily by the employees in NDCA." *Id*. Finally, as an additional factor, Facebook claimed that "**a great majority, if not all**," of Voxer's witnesses are located in the NDCA. *Id*. at 6 (emphasis in original).

In its response, Voxer makes two counterarguments regarding Facebook's analysis of the source of proof. First, Voxer argues that Facebook has incorrectly concluded that its only relevant documents and employees to the case are those that support the Live products. ECF No. 38 at 2. Specifically, Voxer asserts that Facebook's attempt to limit the scope of Voxer's claim to just two Live products ignores that there would in fact be accessible proof for the non-Live products within the WDTX. *Id*. at 7. Additionally, Voxer points to the fact that although only one Facebook Live employee works part-time in Austin, there are over 1,500 other employees in the area serving in a broad range of roles that support all other products at issue. *Id*. at 3. Voxer also points to the "numerous" job openings for roles that support the accused products, specifically the video services. *Id*.

Second, regarding its own sources of proof, Voxer asserts that all documents and witnesses concerning the patents at hand will be accessible from the WDTX. *Id*. at 4. Voxer identifies several current and former employees[5] that it contends will have the most relevant knowledge about the patents. *Id*. Voxer proffers evidence that they are dispersed throughout the country and a transfer to NDCA would not be clearly more coinvent than the WDTX.[6] *Id*.

In its Reply, Facebook asserts it has determined the scope of the case based on the patents asserted and the likely accused products, and the employees with knowledge of the accused products are primarily located in Northern California. ECF No. at 4. Additionally, Facebook emphasizes that the "thrust" of the Voxer's Complaint is Facebook Live and Instagram Live, and the other Facebook products are nothing more than "generic allegations." ECF No. 41 at 2.

In previous orders, this Court has lamented about the fact that the "relative ease of access to sources of proof" factor, namely the location of documents, is somewhat anachronistic with respect to modern litigation, especially modern patent litigation. This is because access to most information is no longer a geographic construct, it is likely available anywhere that a company or an attorney has a computer or a laptop and a printer. But to make clear, while the Court may question the relevance of this element in 2020, it must faithfully adhere to Fifth Circuit precedent. Thus, the Court finds that the "relative ease of access to sources of proof" slightly weighs in favor of the requested transfer for the following reasons: First, although Voxer asserts that its documents are accessible in the WDTX, because Facebook is the accused infringer, it is likely that Facebook will have the bulk of the documents that are relevant in this case. *See, e.g.*, *In re Genentech, Inc.*,

---

[5] (1) Co-founder and named inventor of several of the patents Tom Katis, who lives and works in Jackson, Wyoming. *See,* ECF No. 38-2. (2) Co-founder and named inventor of several of the patents Matthew Ranney, who lives in Pittsburg, Pennsylvania. *See,* ECF No. 38-5

[6] Voxer provides several potential third-party witnesses that have indicated that they are willing to testify in WDTX. *See,* ECF No. 38-2, T. Katis Decl. ¶5;  ECF No. 38-3, J. Panttaja Decl. ¶ 10; ECF No. 38-4,  M. Panttaja Decl. ¶ 10; CF No. 38-5, Ranney Decl. ¶ 5.

566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Therefore, the Court finds that the location of the documents relevant in this case weighs slightly towards transfer.

Next, the Court finds that for party witnesses, NDCA and WDTX are equally convenient. More specifically, while Facebook has identified multiple employees in NDCA with relevant information and states that it only has one Austin employee that works part-time on the Live products, Voxer identifies at least 14 other Austin Facebook employees who may have relevant information. Furthermore, Voxer asserts that some of the Austin-based Facebook employees may have knowledge of Facebook's other alleged products websites, including "the website" and "the mobile app" that could support Voxer's indirect infringement claims. ECF No. 38 at 2–4. Because the parties have identified potential witnesses in both NDCA and WDTX (with varying levels of specificity), the Court finds that the issue of the location of party witnesses are neutral in terms of transfer. Thus, because the Live products documents location weighs in favor of transfer and the location of the remaining of the products documents and party witnesses is neutral towards transfer, the Court finds that the relative ease of access to sources of proof only slightly weighs in favor of transfer.

### b. Availability of compulsory process to secure the attendance of witnesses

The next factor the Court considers is the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See Volkswagen II*, 545 F.3d at 316. In its opening brief, Facebook contends that this is the strongest factor in favor of transfer. ECF No. 29 at 7. Facebook stresses that NDCA, and not WDTX, has absolute subpoena power over both companies' potentially relevant witnesses,

either former employees or third-party witnesses. *Id* at 8. Finally, Facebook asserts that at least two potential non-party prior art sources have their principal places of business in Northern California. *Id.*

In its response, Voxer argues that this factor weighs against transfer for three reasons. First, while the convenience of witnesses is important, the convenience of party witnesses is appropriately given little weight. ECF No. 38 at 8. Second, the majority of Voxer's witnesses have moved from NDCA and are all willing to travel to the WDTX for this case, which negates the relevance of their distance from Texas and the availability of compulsory process as a factor favoring transfer. *Id*. at 9. Third, Facebook has not confirmed that its former employees would be unwilling to testify in this District. Further, Facebook has not clarified how the former employees would have unprivileged information that is not already available to Facebook. *Id.*

Additionally, with respect to Facebook's Austin office, Voxer argues that Facebook downplays its relevance to the products and/or services at issue. *Id*. at 8. Voxer identifies at least 14 Facebook employees located in this District who appear to possess relevant knowledge. *Id*. at 3. In its Reply, Facebook asserts that Voxer's failure to identify third-party witnesses, subject to compulsory process in the WDTX, is evidence in favor of transfer to NDCA. ECF No. 41 at 4.

After considering the arguments, the Court finds that this factor is neutral for the reasons that follow. First, the parties have identified potential witnesses that may have relevant information in both NDCA and WDTX as well as outside of either District. For Facebook witnesses, although the parties disagree whether there are any Facebook witnesses in WDTX that may have relevant information, the Court resolves factual conflicts in favor of the non-movant. *Weatherford*, 2018 WL 4620636 at *2. Thus, the Court views that because of wide range of roles, responsibilities, services, Facebook's employees perform within the WDTX, they would have access to the relevant

information. Furthermore, because Voxer provided declarations from identified third-party witnesses stating that they are willing to travel, and Facebook lack of evidence that its third-party witnesses would be unwilling to travel, the Court finds Facebook's argument that this factor favors transfer unpersuasive. *See,* ECF No. 38 at 4 (citing Declaration of Tom Katis, Exs B. ¶4–5). *See Arielle, Inc. v. Monster Cable Prod., Inc*., No. 2:06-CV-00382, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007) (convenience of witnesses did not support transfer where plaintiff provided affidavits stating that "key" witnesses were willing to travel to Marshall, Texas). Accordingly, because there may be Facebook witnesses with relevant information in both NDCA and WDTX, and because the inventors of the Patents-in-Suit are willing to testify in this District, the Court finds that the location of the Facebook witnesses is a neutral factor.

### c. Cost of attendance for willing witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). The Court should consider all potential material and relevant witnesses. See *Alacritech Inc. v. CenturyLink, Inc*., No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343. However, the convenience of party witnesses is given little weight compared to non-party witnesses. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc*., No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010).

Facebook contends that all of its expected witnesses are located in NDCA, New York, and Seattle. ECF No. 29 at 3. Facebook asserts that, because the "most known third-party and party

9

witnesses are in Northern California, some 1,500 miles away from the Western District," the burden of attending trial would be significantly greater in WDTX than in NDCA. *Id*. at 8. Facebook further argues that due to Voxer's small workforce, primarily located in Northern California, requiring employees to travel to Texas will be highly disruptive to Voxer's business. *Id*. Typically, this Court has some skepticism when the party who is arguing that a case should be transferred relies on the lack of convenience for the relevant witnesses that will be called by the party who filed the suit in this venue. This skepticism proves justified here with the evidence proffered by Voxer.

Voxer, asserts (and the Court accepts as credible) that the majority of its relevant witnesses are not located in NDCA; instead, its key witnesses reside in Pennsylvania, Wyoming, and Arizona. ECF No. 38 at 9. Voxer provides declarations from these third-party witnesses stating that they would be willing to travel to WDTX. *Id*. Further, Voxer asserts that travel costs and accommodations for its witnesses would be more costly and less convenient in NDCA than in WDTX. *Id*. Therefore, Voxer argues that it is far easier and more cost-effective for Voxer to travel WDTX. *Id*. at 3.

The Court finds that this factor weighs against transfer for the following reasons: First, the cost of attendance of party witnesses does not weigh for or against transfer because there appear to be several potential witnesses in both NDCA and WDTX, as well as outside either District. *SynKloud Techs., LLC v. Dropbox, Inc.,* 2020 WL 2494574, at *5 (W.D. Tex. May 14, 2020). Second, the cost of attendance of Facebook witnesses is neutral because the parties identified potential Facebook witnesses in both districts. Likewise, the cost of attendance of Voxer is also neutral because regardless of the District, the witnesses will have to travel over 1,000 miles. Finally, although Facebook argues that its' "relevant" third-party witnesses that all that reside in

NDCA, it does not specify how the former Live employees would have relevant information that Facebook does not have access to. Because both districts have several potential Facebook witnesses, including the one Live employee in WDTX, compared to the substantial cost disparity for the willing third-party witnesses located elsewhere, the Court finds that the cost of attendance of willing witnesses factor weighs against transfer to the NDCA.

### d. All other practical problems that make trial of a case easy, expeditious and inexpensive

In considering a transfer, this Court must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. Multiple suits involving the same or similar issues may create practical problems that will weigh in favor for or against transfer. *Uniloc USA, Inc. v. Chief Architect*, Inc., No. 6:15-cv-1003-RWS-KNM, 2016 WL 9229319, at *5 (E.D. Texas Dec. 2, 2016) (citing *In re Volkswagen of Am., Inc*., 556 F.3d 1349, 1351(Fed. Cir. 2009)). This factor is important in cases where, for example, "the trial court involving the same patent and underlying technology during a prior litigation" or where "there is co-pending litigation before the trial court involving the same patent and underlying technology." *In re Vistaprint Ltd*., 628 F.3d 1342, 1346 (Fed. Cir. 2010) (applying Fifth Circuit law). But considerations of judicial economy and the existence of co-pending litigation are not dispositive in the transfer analysis. *See In re Google Inc*., No 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb 23, 2017).

Facebook argues that there are no practical issues against the transfer to the NDCA. ECF No. 29 at 9. Facebook asserts that since this case is in the early stages, and this Court has neither had to expend time or expense on this case, this factor would not weigh against a transfer. *Id*. Voxer claims that although the factor is not against the transfer, this factor is neutral to the transfer

analysis. ECF No. 38 at 9. Further, Voxer argues that there would be no delay if the case is not transferred. *Id*.

This factor does not establish that NDCA is clearly more convenient than WDTX in this case. Although Facebook claims that there are no issues to prevent the transfer, this does not satisfy the heavy burden required to grant the transfer. The Court finds that this factor is neutral.

### e. Administrative difficulties flowing from court congestion

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). In its motion, Facebook argues that this would be a neutral factor for transfer. ECF No. 29 at 10. Facebook provides data from Lex Machina that shows NDCA[7] has a similar median time to trial (approximately 725 days) for cases to WDTX[8] (approximately 619 days). *Id*.

In its response, Voxer argues that this factor actually weighs against transfer. ECF No. 38 at 10. Voxer cites the data provided by Facebook, which shows that median time to trial of 739 days for civil cases over the last 11 years in NDCA. *Id*. Additionally, Voxer narrows the comparison to *patent* cases in the last five years, which shows the actual median time for NDCA is 781 days[9]. Further, Voxer references the Order Governing Proceedings[10] ("OGP"), which has the trial scheduled to start in September 2021, a full six-months ahead of NDCA's median timeframe. *Id*. Finally, Voxer citing *Fintiv,* argues that since time to trial is faster in this District, this factor weighs against transfer. *Id*.

---

[7] Data reflects cases in NDCA from January 2009 to February 2020. *See*, ECF No. 27–13
[8] Data reflects cases from WDTX from January 2015 to February 2020. *Id.*
[9] Data reflects patent cases in NDCA from January 2015 to February 2020. *See,* ECF No. 36 – 23
[10] *Order Governing Proceedings—Patent Case*, Western District of Texas, available at https://www.txwd.uscourts.gov/wpcontent/uploads/Standing%20Orders/Waco/Albright/Order%20Governing%20Proceedings%20-%20Patent%20Cases%20022620.pdf

In the Court's OGP, the trial is scheduled 42–52 weeks after the Markman hearing. ECF No. 31 at 6–9. In this case, because the Markman hearing is scheduled for October 09, 2020, the trial will be scheduled to start between September 9, 2021 and October 11, 2021. Even assuming the latter date, the time from filing (January 7, 2020) to trial will be about 22 months. As such, because the time to trial will be shorter in this District, the Court finds that this factor weighs against transfer.

### f.  Local interest in having localized interests decided at home

In its motion, Facebook argues that NDCA has a far greater local interest in this case, which strongly favors transfer. ECF No. 29 at 9–10. Facebook's argument is premised on its view that the Live technology is Facebook's only product at issue, that its headquarters are located in NDCA, the accused technology was primarily developed there, and its employees most knowledgeable about the finances and marketing of the accused technology are in NDCA. *Id*. at 2. Facebook also argues that while it has offices and employees in Austin, they do not provide support to the Live products that it views as the issue. *Id*. Therefore, none of its WDTX based employees are key witnesses to facts relevant to the issues in this case. *Id*. at 10.

In its response, Voxer asserts that this District has a local interest because Facebook has a large presence in the district with its Austin office. ECF No. 38 at 2. Voxer also argues that WDTX has a particularized interest in this case because of Facebook's large presence and expansion efforts within the District. *Id*. at 3. Voxer points to several Facebook employees that have responsibilities to several of the accused products, as well as at least one that Facebook admits is relevant to the Live products. *Id*.

The Court finds that this factor weighs against transfer for the reasons that follow. First, Facebook has offices in both NDCA and WDTX, so both districts have a significant interest in this

13

case. Furthermore, although the parties dispute whether there are "relevant" Facebook employees located in WDTX, Voxer has identified several Facebook employees in WDTX that may provide relevant information. *See* ECF. No. 36-8. Additionally, as Voxer points out, Facebook is steadily increasing its already substantial presence in the WDTX. Through Facebook's multiple offices and over 1,500 employees, not including the jobs Facebook is currently hiring for in this District, the WDTX has a significant localized interest with respect to Facebook. For all of these reasons, Facebook's contribution to this factor is neutral. Accordingly, given that Facebook's presence in both districts is neutral in terms of transfer, the Court finds that the local interest in having localized interests decided at home is does not favor transfer.

### g. Familiarity of the forum with the law that will govern the case

Both parties agree that this factor is neutral. ECF No. 29 at 10 (Facebook), ECF No. 38 at 11 (Voxer). The Court also agrees.

### h. Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral. ECF No. 29 at 10 (Facebook), ECF No. 38 at 11 (Voxer). The Court also agrees.

### i. Conclusion

Having found that the access to proof factor for Facebook's Live products slightly weighs in favor of transfer, while the other accused products access to proof, cost to willing witnesses, court congestions and local interest weigh against transfer with the other factors being neutral, the Court finds that Facebook has not met its significant burden to demonstrate that NDCA is "clearly more convenient." *Volkswagen II*, 545 F.3d at 314 n.10, 315*; QR Spex,* 507 F. Supp. 2d at 664.

### IV. Discussion regarding alternative motion to transfer to Austin

Facebook's alternative motion is to transfer this case to the Austin Division. Facebook shows that the Austin Division is clearly more convenient, by its' offices, employees, and sources of proof that is readily available in Austin, and none of those factors favor the Waco Division. ECF No. 29 at 10. However, Voxer attempts to argue that Facebook has failed to show that those factors favor transfer to the Austin Division. ECF No. 38 at 11.

The Court agrees that the Austin Division is more convenient than the Waco Division for the reasons Facebook has described. Because Facebook's substantial presence, the factors demonstrate that Austin is "clearly more convenient." In short, whatever facts weigh against transfer to NDCA from WDTX also weigh in favor of transferring to Austin from Waco. Therefore, the Court finds that Facebook has met its significant burden of demonstrating that Austin is "clearly more convenient."

### V. Conclusion

It is therefore **ORDERED** that Facebook's motion for transfer venue to the Northern District of California is **DENIED**. It is further **ORDERED** that Facebook's alternative motion is **GRANTED** and that the above-styled case be **TRANSFERRED** to the Austin Division but remain on the docket of United States District Judge Alan D Albright and according to the scheduling order that was entered in this case on June 10, 2019.

**SIGNED** and **ENTERED** this 22nd day of June, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE